**IT IS ORDERED as set forth below:**



Date: August 28, 2020

_____

**Paul W. Bonapfel**
**U.S. Bankruptcy Court Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | |
|---|---|
| IN RE:<br><br>ALDO F. AVILA,<br>      Debtor. | Case No. 18-42114-pwb |
| ALDO F. AVILA,<br>      Plaintiff,<br>vs.<br><br>AMANDA N. TOWNSEND LONG and<br>JOHN P. BATSON,<br>      Defendants. | Adversary No. 19-4019-pwb |

**ORDER ON MOTION FOR SUMMARY JUDGMENT [9]**

Aldo F. Avila, the chapter 13 debtor, had sex with Amanda N. Townsend Long while he was a parole officer and she was a parolee. Mr. Avila pled guilty on September 12, 2017, to

violation of O.C.G.A. § 16-6-5.1(b)(2),[1] which makes it a felony for a parole officer to have sexual contact with a parolee.

On July 30, 2018, Ms. Long filed a lawsuit in the District Court against Mr. Avila and others.[2] Her complaint alleges that Mr. Avila abused his supervisory authority as a parole officer and coerced her into having sex, thereby giving rise to claims under 42 U.S.C. § 1983 for deprivation of her Fourteenth Amendment liberty interests under color of state law. She also asserts claims under Georgia tort law.

Mr. Avila filed his chapter 13 bankruptcy case on September 10, 2018, and the District Court stayed Ms. Long's action against Mr. Avila only.

---

[1] O.C.G.A. § 16-6-5.1(b)(2) effective May 3, 2016 through June 30, 2019, and thus applicable at the time of Mr. Avila's conduct, provided as follows:

> (b) A person who has supervisory or disciplinary authority over another individual commits sexual assault when that person:
> . . . .
> (2) Is an employee or agent of any community supervision office, county juvenile probation office, Department of Juvenile Justice juvenile probation office, or probation office under Article 6 of Chapter 8 of Title 42 and engages in sexual contact with such other individual who the actor knew or should have known is a probationer or parolee under the supervision of any such office.

As amended. O.C.G.A. § 16-6-5.1(b) provides:

> (b) An employee or agent commits the offense of improper sexual contact by employee or agent in the first degree when such employee or agent knowingly engages in sexually explicit conduct with another person whom such employee or agent knows or reasonably should have known is contemporaneously:
> . . . .
> (2) Under probation, parole, accountability court, or pretrial diversion supervision of the office or court of which he or she is an employee or agent.

[2] Civil Action No. 4:18-c-0102-HLM, U.S. District Court, N.D. Ga.

2

In this adversary proceeding, Mr. Avila seeks a determination that any liability to Ms. Long is not excepted from discharge.[3] Ms. Long asserts that her claim is not dischargeable because it is for damages as a result of willful or malicious injury.

Ms. Long in her motion for summary judgment [Doc. No. 9] seeks dismissal on jurisdictional grounds or entry of judgment that the debt is excepted from discharge because Mr. Avila's guilty plea establishes that he acted willfully and maliciously. Mr. Avila contends that the sex was consensual such that Ms. Long did not suffer damages from willful or malicious injury. If this dispute of fact is material, the Court cannot grant summary judgment to Ms. Long.

After addressing jurisdictional matters, the Court will address whether Mr. Avila's conviction establishes as a matter of law that he acted willfully or maliciously, even if Ms. Long consented.

## I. Jurisdiction

Mr. Avila asserts that this Court has the authority to hear and determine this proceeding as a "core proceeding" under 28 U.S.C. § 157(b)(2)(I). Ms. Long seeks its dismissal on the ground that this Court lacks jurisdiction to determine dischargeability of the debt on Constitutional grounds. In general, she asserts that she is entitled to determination of the issues by an Article III judge.[4]

---

[3] Mr. Avila's complaint also names John P. Batson as a defendant. Mr. Batson is Ms. Long's lawyer. The Court does not understand why he is named as a party.

[4] Long Brief at 6-16.

Ms. Long notes in her brief that she sought trial by jury in her lawsuit in the District Court. Long Brief at 1. Her contentions that the bankruptcy processes should not interfere with her right to proceed to assert her fundamental Constitutional rights in the District Court implicitly raises the question of whether this dischargeability proceeding improperly deprives her of that right.

The right to jury trial may exist even in a core proceeding. *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33 (1989). A proceeding to determine dischargeability, however, is an equitable proceeding in which no jury trial right exists. *See, e.g., American Express Travel*

3

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(b). This bankruptcy judge has authority to hear it under 28 U.S.C. § 157(a) by reference from the District Court. LR 83.7, NDGa.

As a proceeding to determine the dischargeability of a debt, it is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Because it is a core proceeding, this Court has the statutory authority to hear and determine it under 28 U.S.C. § 157(b)(1).

The fact that this proceeding is a core proceeding, however, does not necessarily mean that this Court has the Constitutional authority to determine it. *Stern v. Marshall,* 564, U.S. 462 (2011). When a bankruptcy court lacks Constitutional authority to determine a proceeding, however, the remedy is not dismissal for lack of jurisdiction. Instead, the bankruptcy court may hear the matter and issue proposed findings of fact and conclusions of law for *de novo* review by the District Court under 28 U.S.C. § 157(c)(1). *Executive Benefits Insurance Agency v. Arkison,* 573 U.S. 25 (2014).

It is immaterial to this Court's job in this proceeding whether it determines the issues or only hears them. With regard to the motion for summary judgment, the Court can only decide issues of law based on undisputed facts. The District Court will review any such result *de novo* regardless of the Court's authority, so it does not matter.

If the matter proceeds to trial, the Court's tasks are to decide disputes of fact and to apply the law. From the Court's standpoint, whether the result of the Court's work is the *determination* of those factual and legal issues or a *proposed* determination of them, the Court's work is the

---

*Related Services Co., Inc. v. Hashemi*, I104 F.3d 1122 (9th Cir. 1997); *N.I.S. Corp. v. Hallahan (In re Hallahan),* 936 F.2d 1496 (7th Cir. 1991); *Stanbrough v. Valle* (In re Valle, 469 B.R. 35 (Bankr. D. Idaho 2012).

4

same. Determination of the *Stern* issue, therefore, is immaterial to how this matter proceeds in this Court.[5]

Because the District Court clearly has jurisdiction over this proceeding, because this Court clearly has authority to hear it, and because determination of the motion for summary judgment and the conduct of any trial will proceed in the same manner regardless of the Court's Constitutional authority, the Court will defer ruling on its Constitutional authority.[6]

The Court has authority, at a minimum, to hear this dischargeability proceeding that is within the jurisdiction of the District Court. To the extent that the motion for summary judgment seeks dismissal of the complaint on jurisdictional grounds, it is denied.

## II.  Discussion

### A.  The Applicable Statutes Governing Dischargeability

The statute governing an exception of Ms. Long's claim from discharge will depend on the type of discharge Mr. Long receives. Unless his bankruptcy case is dismissed, Mr. Avila will receive either: (1) a discharge under § 1328(a) if he completes all of his payments under a confirmed plan (a "completion discharge"); (2) a discharge under § 1328(b) if he does not complete payments but he nevertheless meets the requirements for a discharge (a "hardship discharge"); or (3) a discharge under § 727(a) if the case converts to chapter 7 (unless an objection to such discharge is sustained) (a "chapter 7 discharge").

In the case of a completion discharge, § 1328(a)(4) excepts a claim for damages resulting

---

[5] Determination of dischargeability is a different issue from determination of Mr. Avila's liability to Ms. Long and her damages, if any. The Court does not have authority to try these matters without her consent under 28 U.S.C. § 157(e).

[6] At that time, the Court will consider whether the Supreme Court's ruling in *Tennessee Student Assistance Corp. v. Hood,* 541 U.S. 440 (2004), that the discharge of debt is an *in rem* proceeding.

5

from "willful *or* malicious injury by the debtor that caused personal injury." (Emphasis added). When a debtor receives a hardship discharge, § 1328(c)(2) excepts all of the debts specified in § 523(a), which also applies to a chapter 7 discharge. Section 523(a)(6) excepts a debt for "willful *and* malicious injury by the debtor to another entity or to the property of another entity." (Emphasis added).

In the circumstances of this case,[7] therefore, the difference is that Ms. Long's claim is excepted from a completion discharge if Mr. Avila's conduct is either willful or malicious, whereas his conduct must be both if he receives one of the other discharges.

The parties have not focused on this distinction, and the Court finds it unnecessary to deal with it at this stage of this proceeding. The analysis of what is "willful" and "malicious" is the same under all of the discharges. Further, as the Court explains below, the critical issues in this proceeding are whether the sex was consensual and whether, if so, it makes any difference. If the sex was not consensual, or if that is immaterial, Mr. Avila's conduct was both willful and malicious. Conversely, if Ms. Long consented and her consent is material, Mr. Avila did not act willfully or maliciously.

**B. Consent As An Issue In Determination of "Willful" and "Malicious" Conduct**

Although Mr. Avila contends that the sex was consensual, Ms. Long alleges facts to establish that Mr. Avila mentally coerced her by abusing his authority as a parole officer.

Ms. Long states that Mr. Avila "abused his power as a parole officer to coerce [her] into

---

[7] To be excepted from a completion discharge under § 1328(a)(4), the debt must for damages resulting from willful or malicious conduct that caused personal injury to an individual or the death of an individual. The exception from the other discharges under § 523(a)(6) covers debts of any nature arising from willful and malicious conduct. Ms. Long's claim is for personal injuries; physical harm is not required. *E.g., Adams v. Adams (In re Adams),* 478 B.R. 476, 486 (Bankr. N.D. Ga. 2012) (Diehl, J.); *accord, e.g., Seubert v. Deluty (In re Deluty),* 540 B.R. 41, 47 (Bankr. E.D. N.Y. 2015). The parties do not raise the issue in this proceeding.

6

having sex with him by manipulating information about [her] performance as a parolee, including information about drug tests, and threatening to have [her] found in violation of the terms of her parole, which could return her to prison."[8] She states that she made several complaints to Mr. Avila's supervisor but that Mr. Avila continued to contact her and abuse his authority by forcing her to have sex without her actual or legal consent, even after she left a halfway house due to her fear of further abuse by Mr. Avila.[9] She also notes that another female parolee had filed an earlier complaint about Mr. Avila.[10]

Under these facts, Ms. Long has a claim for a violation of her substantive due process rights under color of state law for violation of her right to bodily integrity. *See Rogers v. City of Little Rock,* 152 F.3d 790 (8th Cir. 2015). The question is whether such a claim is dischargeable.

In *Kawaauhau v. Geiger,* 523 U.S. 57, 61 (1998), the Supreme Court ruled that nondischargeability under § 523(a)(6) requires "a deliberate or intentional injury, not merely a deliberate or intentional *act* that leads to injury." (Emphasis in original).

With regard to "willfulness," the Eleventh Circuit has explained, "A debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *E.g. Kane v. Stewart Tilghman Fox & Bianchi PA (In re Kane),* 755 F.3d 1285, 1293 (11th Cir. 2014); *Maxfield v. Jennings (In re Jennings),* 670 F.3d 1329, 1334 (11th Cir. 2012).[11]

Under these cases, "malicious" means "wrongful and without just cause or excessive,

---

[8] Long Brief at 4. See also Long's "Statement of Undisputed Facts in Support of Summary Judgment" [Doc. No. 9-2} (hereinafter "Long SUF") at ¶¶ 6-10.
[9] Long Brief at 5. See also Long SUF at ¶¶ 6-10.
[10] Long Brief at 5. See also Long SUF at ¶¶ 6-10.
[11] Both cases cite *Hope v. Walker (In re Walker),* 48 F.3d 1161, 1163 (11th Cir. 1995), which quotes *In re Ikner,* 883 F.2d 986, 991 (11th Cir. 1989). *Accord, e.g., Manson v. Galaz (In re Monson),* 661 Fed. Appx. 675 (11th Cir. 2016).

7

even in the absence of personal hatred, spite, or ill will.  To establish malice, a showing of specific intent to harm another is not necessary." *Kane, supra,* 755 F.3d at 1294; *Jennings, supra,* 670 F.3d at 1334.

Laying aside the criminal aspects of the conduct for the moment (which the Court considers later), nondischargeability under these standards cannot arise from a voluntary, consensual sexual encounter, free of mental (or other) coercion.  Willfulness is lacking because the debtor does not intend any injury, and it is not malicious because it is neither wrongful nor without just cause.

On the other hand, if a sexual encounter results from mental coercion as Ms. Long describes, the conduct is both willful and malicious.  It is willful because the coerced sex is the intended injury, and it is malicious because coerced sex is both wrongful and without just cause. *See Johnson v. Fors (In re Fors),* 259 B.R. 131 (B.A.P. 8th Cir. 2001) (Claim against chiropractor who had coerced sex with patient in violation of professional standards and criminal statute is nondischargeable); *Dorer v. Moberg (In re Moberg),* 156 B.R. 810 (Bankr. D. Minn. 1993) (Claim against doctor who had coerced sex with employee is nondischargeable).[12]

## C.  Whether the Sexual Was Consensual Is Disputed

Although Ms. Long states facts that establish mental coercion, the Court cannot determine that those facts are true on the record now before the Court.

---

[12] *Cf. Thompson v. Kelly (In re Kelly),* 238 B.R. 156 (Bankr. E.D. Mo. 1999) (Debtor convicted of sexual battery under Georgia law, defined as intentional "physical contact with the intimate parts of the body of another person without the consent of that person"; civil judgment for damages not dischargeable).

In *Dorer v. Moberg,* 1995 WL 465547 (Ct. App. Minn. 1995) (unpublished), the court ruled that the bankruptcy court's decision was not preclusive in the plaintiff's action against the doctor for sexual battery, a claim that requires a showing that the actions were intentional and unpermitted.  The doctor prevailed at a jury trial.  The court stated that the bankruptcy court had found that she did not want to have sex but had not found that she had not consented.

8

Mr. Avila in his affidavit contends that the sexual relationship was consensual. He states that he "did believe Ms. Long consented to and willfully participated in our sexual involvement. I did not intend any harm she may have suffered and I was and am unaware of what damage and/or harm she may have suffered."[13]

The record does not include an affidavit from Ms. Long that contests Mr. Avila's affidavit. Ms. Long relies on Mr. Avila's guilty plea to the statute that prohibits sex between a parole officer and a parolee and his admission of facts at the hearing on his guilty plea to establish that Mr. Avila's conduct was both malicious and willful.

Mr. Avila's guilty plea and criminal conviction do not establish that mental coercion occurred or that the sex was not consensual. Consent is not a defense to criminal liability under the statute.[14] Accordingly, that issue was not determined in the criminal proceeding.

Similarly, the issue of mental coercion as opposed to consent was not part of Mr. Avila's admissions at the plea hearing. At that hearing, Mr. Avila stated that the prosecutor's recitation of the following factual basis for his guilty plea was correct:[15]

> Your Honor, Mr. Avila was a parole officer with our local Department of Community Supervision; the victim in the case was a parolee. She was not assigned to his caseload, but he did have a general authority over her as a parole officer in that same office. He was actually advised not to have any dealing with her. He became involved when she

---

[13] Affidavit of Aldo Francisco Avila [Doc. No. 10-3] at ¶ 7.
[14] O.C.G.A. § 16-6.5.1(e). At the time of Mr. Avila's conviction, this subsection was (d). A later amendment renumbered it as (e) but did not change the language.
[15] Long Brief at 3. The transcript of the guilty plea that Ms. Long filed in support of her summary judgment motion [Doc. No. 9-3] at 6, has most of the quoted language on page 5 [Doc. No. 9-3 at 9] and shows that Mr. Avila admitted it, but page 4, which has the beginning of the quoted language, is missing. The omission is not material.

9

failed her drug screen and then began contacting her at home and outside of business hours and ended up developing a sexual relationship with her.

This statement does not address mental coercion or the absence of consent. By admitting these facts, therefore, Mr. Avila did not admit that the sex arose from mental coercion or that Ms. Long did not consent.

The record before the Court, therefore, shows a factual dispute over whether the sex resulted from Mr. Avila's mental coercion of Ms. Long or was consensual. The issue then becomes whether the disputed fact is a material one. In other words, the question is whether it matters if the sex was consensual.

### D. Whether the Issue of Consent Does Not Matter

The legal issue is whether, as a matter of law, Mr. Avila acted willfully or maliciously in having sex with Ms. Long based on his violation of O.C.G.A. § 16-6-5.1(b)(2), even if no mental coercion occurred and the sex was consensual. The Court has not found any cases that consider whether consent to unlawful sex between two adults matters for purposes of determining whether the conduct is "willful" or "malicious" for dischargeability purposes.

Courts have addressed the issue of consent in the context of whether a debtor convicted of having unlawful sex with a minor may raise the minor's consent to show that the conduct was not willful or malicious. They have reached different results.

In *McComas v. Rosenberger,* 208 B.R. 445 (Bankr. C.D. Ill. 1997) (*In re Rosenberger)*, the debtor had sex with a 17-year-old student at the high school where he was a teacher. He was convicted on his guilty plea to a felony of having sex with a person under 18 while holding a position of trust, authority, or supervision over her. He asserted that his conduct was not malicious because the student voluntarily engaged in the relationship.

10

The court granted summary judgment on the student's nondischargeability claim under § 523(a)(6), rejecting consent as a defense. Concluding that the conduct was both willful and malicious, the court observed, *Long, supra,* 550 B.R. at 447:

> The State of Illinois has a goal of preventing the sexual exploitation of minors by persons significantly older than the victim or in a position of trust or authority over the victim. *People v. Reed,* 148 Ill.2d 1, 169 Ill. Dec. 282, 591 N.E.2d 455 (1992). . . . It is presumed under the Illinois state law that a person in the Plaintiff's situation is not capable of giving her consent to a person in the Debtor's position. The Debtor took advantage of his teacher-student relationship with the Plaintiff, and the Plaintiff's consent does not excuse the Debtor's actions.

To the same effect (although it does not involve consent) is *Doe v. Fleetwood (In re Fleetwood),* 2013 WL 2178096 (Bankr. D. Alaska 2013). The debtor had been convicted on a no contest plea to sexual molestation of a child when the child was between four and seven years of age. The Court rejected the debtor's argument that the plea and a default judgment in the child's civil case against him were not preclusive as to whether the conduct was willful and malicious because those issues had never been litigated.

The court explained, *id.* at *6 (footnotes and quotations omitted):

> Where the damages arise from sexual abuse, willfulness is apparent because the subjective motive to inflict harm is self-evident, either because the tortfeasor knows his conduct is certain or almost certain to cause harm, or because he should know and therefore the intent is inferred as a matter of law. Such inference flows from the generally accepted conception of harm as being inherent in the act of sexually abusing a child.
>
> [T]he nature of the wrongful act necessarily establishes malice because sexual abuse of a minor is inherently an intentional, wrongful act which unquestionably causes damage. Nor can there be any cause or excuse for sexual abuse.

The court in *Lewis v. Long (In re Long),* 550 B.R. 294 (W.D. Va. 2016), took a different approach. There, the debtor, then 22 or 23, had sex with a minor, then 12 or 13, at various times over a two-year period. After he pled guilty to carnal knowledge of a child between 13 and 15 years of age, she filed a civil lawsuit against him and obtained a default judgment.

After the debtor filed a chapter 7 bankruptcy case, the minor sought a determination that the judgment was nondischargeable under § 523(a)(6). At the trial at which the debtor was the only witness, he admitted conceiving a child with the minor when she was 13 but stated that he was not told her age until after the fact.

The bankruptcy court noted that state law defined carnal knowledge of a minor as a strict liability offense and had no intent requirement. Accordingly, the bankruptcy court concluded, intent was not essential to the state court's default judgment, and issue preclusion did not apply. The bankruptcy court concluded that the evidence was otherwise insufficient to establish that the debtor's conduct was willful or malicious.[16]

On appeal, the minor asserted that a court should infer the existence of willful and malicious injury in any case in which a debtor engaged in sexual contact with a minor based on policy considerations behind state statutory rape laws of protecting minors. The district court declined to do so, *id.* at 298-99:

> In light of the Supreme Court's decision in [*Kawaauhau v. Geiger,* 523 U.S. 57 (1998)] and in keeping with the court's duty to construe the exceptions to discharge narrowly and in favor of the debtor, the court agrees with the bankruptcy court that a creditor must prove by a preponderance of the evidence that a debt arose from a willfully and maliciously inflicted injury in order to have the debt declared nondischargeable under

---

[16] *Lewis v. Long (In re Long),* 504 B.R. 424 (Bankr. W.D. Va. 2014).

12

§ 523(a)(6) and that the court is not permitted to infer such elements solely based on the public policy considerations underlying the antecedent action.

Under the reasoning of *Rosenberger* and *Doe,* the dispute over whether Ms. Long was mentally coerced into sex with Mr. Avila or whether she consented is immaterial. The violation of the statute alone establishes that Mr. Avila's conduct was both willful and malicious. Under the reasoning of *Long,* however, consent is material, and the Court cannot grant summary judgment in Ms. Long's favor.

The question here is a close one.[17] Because all of these cases involve sex with a minor, they are distinguishable from the sex between two adults here. Nevertheless, the rationale that supports the conclusion that a conviction for unlawful sex with a minor preclusively establishes willful and malicious conduct also applies to unlawful sex with a parolee. The purpose of both statutory rape laws and Georgia's statute is to protect persons in a vulnerable position.

On balance, however, the Court thinks that the *Long* analysis is the better one in the circumstances of this case where the sex is between two adults.

The Court recognizes that the determination of consent when one adult has authority over another is a difficult one and that, therefore, the State of Georgia as a matter of policy has decided that consent or proof of injury does not matter.

But the Bankruptcy Code's requirements for determining whether conduct is willful or malicious requires a factual inquiry into the debtor's intent. This inquiry necessarily requires an examination of the relationship between the parties and whether it arose from mental coercion or

---

[17] Because this Order "involves a question of law as to which there is no controlling decision of [the Eleventh Circuit] or of the Supreme Court of the United States" and because it involves "a matter of public importance," the Court will entertain a request for a direct appeal to the Eleventh Circuit pursuant to 28 U.S.C. § 158(d)(2)(A)(i) under the procedures set forth in Fed. R. Bankr. P. 8006. *See generally* W. Homer Drake, Jr., Chapter 13 Practice and Procedure § 24:7.

consent. It does not seem appropriate to apply a rule that an adult, unlike a minor, is incapable of consenting.

Perhaps, as a matter of public policy, bankruptcy law should not permit a debtor to escape civil liability that arises from criminal conduct involving sex with another adult that does not explicitly require a finding of intent. This is a question for Congress, not the courts, to determine. *See Long, supra,* 550 B.R. at 298.

The Court concludes, therefore, that it cannot determine that Mr. Avila's conduct was willful or malicious based on violation of a criminal statute that requires neither. The disputed factual question of whether the sex resulted from mental coercion of Ms. Long or her consent is material to determination of the dischargeability of any liability of Mr. Avila to Ms. Long. Under Fed. R. Civ. P. 56(a), *applicable under* Fed. R. Bankr. P. 7056(c), the Court may not grant summary judgment unless the moving party shows that no genuine dispute of material fact exists. The Court must, therefore, deny Ms. Long's motion for summary judgment.

This does not mean that Mr. Avila's guilty plea, admissions, and criminal conviction are not relevant to the factual determination of whether his conduct is willful or malicious. "[I]t is permissible for a bankruptcy court to consider circumstantial evidence that a debtor violated a relevant statute, along with other pertinent evidence, when making a factual determination regarding malicious intent." *Johnson v. Fors (In re Fors),* 259 B.R. 131, 139 (B.A.P. 8th Cir. 2001).[18]

---

[18] Because the guilty plea is relevant evidence under the Court's analysis and because the guilty plea and conviction do not involve the issue of consent, the Court need not address the question of whether, under Georgia law (which governs issue preclusion in a nondischargeability action), collateral estoppel applies to a criminal conviction. *See, e.g., Pierce v. Pierce,* 241 Ga. 96, 100, 243 S.E.2d 46 (1978) ("The rule supported by the great weight of authority is to the effect that a judgment of conviction or acquittal rendered in a criminal prosecution cannot be given in evidence to establish the truth of the facts on which it was rendered."). *Accord, e.g., Nationwide*

14

### III. Conclusion

Based on, and in accordance with, the foregoing, it is hereby

**ORDERED** that the motion for summary judgment of Ms. Long be, and the same hereby is, **DENIED.**

**[END OF ORDER]**

---

*Mut. Fire Ins. Co. v. Kim,* 294 Ga. App. 548, 552, 294 Ga. App. 548 (2008)*; Consolidated Management Services, Inc. v. Halligan,* 186 Ga. App. 621, 368 S.E.2d 148 (1988), aff'd 258 Ga. 471, 369 S.E.2d 745 (1988); *Smith v. Goodwin*, 103 Ga. App. 248, 249, 119 S.E.2d 35 (1961); *Keebler v. Willard*, 91 Ga. App. 551(1), 86 S.E.2d 379 (1955); *Padgett v. Williams,* 82 Ga. App. 509, 513 (1950).  *Contra, Hardeman v. Georgia Power Co.,* 42 Ga. App. 435 (1931).

The rule has been criticized.  *Consolidated Management Services, Inc. v. Halligan,* 186 Ga. App. 621, 623, 368 S.E.2d 148 (1988) (Dissenting opinion) (citation omitted), *aff'd* 258 Ga. 471, 369 S.E.2d 745 (1988).  The dissenting opinion states, 186 Ga. App. at 627:

> Georgia courts permit one who was not a party to an earlier civil action to use the judgment in the earlier action as collateral estoppel in a subsequent civil case. *Watts v. Lippitt,* supra. It is inconsistent for this court to permit a finding on a mere preponderance of the evidence in a negligence action to serve as collateral estoppel in a subsequent negligence action and not to permit a finding beyond a reasonable doubt by a jury in a criminal trial to serve as collateral estoppel in a subsequent civil action where that same fact must be proven only by a preponderance of the evidence.

A guilty plea, however, is admissible as an admission against interest.  *E.g., Manning v. Manning,* 270 Ga. 86, 508 S.E.2d 158 (1998); *Trustgard Ins. Co. v. Herndon,* 338 Ga. App. 347, 351, 790 S.E.2d 115 (2016); *Hasty v. Spruill,* 207 Ga. App. 485, 428 S.E.2d 420 (1993) ("We recognize the long standing principle that such admissions are not conclusive and may, therefore, be rebutted to create a genuine issue of material fact for the jury's determination.")

In *Foster v. Lofton*, 2020 WL 247082, at *6  (N.D. Ga. 2020), the district court in considering a motion for summary in a diversity action ruled that a party's guilty plea was admissible and that she could not contradict it in her affidavit.   The court observed, "[T]he record shows that Ms. Foster pled guilty, and the Court must accord respect to the outcome of the state criminal proceeding." *Id.* at *6.  The ruling appears to have the same effect as collateral estoppel.

A federal criminal conviction is entitled to issue preclusive effect. E.g., *Abney v. Raiford (In re Raiford)*, 695 F.2d 521 (11th Cir. 1983); *Caitlen Energy, Inc. v. Rachel (In re Rachel)*, 527 B.R. 529 (Bankr. N.D. Ga. 2015); *Flatau v. Stewart (In re Stewart)*, 186 B.R. 322 (Bankr. M.D. Ga. 1995).